Good afternoon, Illinois Appellate Court, 1st District. Court is now in session. The 5th Division, the Honorable Justice Mathias DeLort presiding. Case number 1-9-1306, Maryland-Barni versus Summit Fire Protection Company. Thank you. Good afternoon, everyone. Welcome to the Illinois Appellate Court, 5th Division. We're going to ask that the lawyers who are going to argue today please introduce themselves and tell us who you represent, beginning with counsel for the appellant. Good morning, Your Honors. John Pegore, I represent 3rd Party Defendant, Summit Fire Protection Company. And are you the only person who's going to be arguing for the appellant? Yes, sir. And who's arguing for the appellee? Good afternoon, Justices. My name is Kevin Bugler. I'll be the sole person arguing. Okay. All right. And I don't think we have your name on the brief, do we? Yeah, his name's on the brief. It is. Okay. I'm just not looking at the right brief. There he is. I was looking for a B. Thank you, Mr. Bugler. All right. We're going to allow each side about 15 minutes for their argument. We know there are a lot of issues in this case. Please concentrate on your main issue, your strongest issue. We will give an extra five minutes for rebuttal for the appellant. We do have another case scheduled for three o'clock, so we're going to try to keep this on schedule. With that, counsel for appellant, you may proceed when ready. May it please the court, counsel. Summit is asking this court to find that the assignment of the contribution actions from Walmart, ICI, and New Line to the plaintiff are invalid. We have two alternative arguments as to why the assignments are invalid. First, the assignments in this case produce a double recovery, contrary to Section 2C of the Contribution Act. You know, that argument intrigued me. He received a settlement of $5 million plus, and if there had been no assignment, all of the S&Rs would have been entitled to collect against you. So how is there a double recovery? He recovers once as the plaintiff, and once as the assignee of the third-party plaintiffs. I mean, there's no double recovery here. It doesn't even make sense. There's a double recovery here because plaintiff recovers $2.6 million in work comp benefits, five from the settling defendants, and he's asking for another $4.6 million here. That's $12,400,000. If he repays the lien in full at $2.6, he nets $9.7. You're arguing this point as if he's recovering this as the plaintiff. He's recovered his $5 million as the plaintiff. He's recovered the remainder as the assignee of the third-party plaintiffs. So if the third-party plaintiffs had prosecuted their claims and there had been no assignment, you'd still have to pay the same amount of money. This isn't a double recovery. We believe it is a double recovery because all this money is paid pursuant to the Contribution Act for the common liability of the parties. The common liability is defined as the total sum of the liability of all persons who contributed as a cause to the plaintiff's injury. How do you compute that? At the end of the day, all of the money is going to the plaintiff. Please answer my questions. How do you compute common liability? Common liability, under the case law and the IPI instruction, is, quote, the total sum of the liability of all persons who contributed as a cause to the plaintiff's injury, unquote. Yes. When Summit pays for the common liability, they're paying for it. How much did he settle for? The consideration stated in the release is $5.07 million plus the assignments. Right. And what are the assignments worth? The assignments allow the plaintiff to pursue the employer for the employer's pro rata share because the settling defendants were not willing to pay the employer's pro rata share. In fact, Your Honor, the dissent in Cloudy, the Justice Nichols dissent in Cloudy, acknowledges that a double recovery occurs. We know you rely strongly on Cloudy, but isn't Cloudy distinguishable because there, the court found that there was nothing to, no contribution claim to, that actually could be assigned? Mm-hmm. The court in Cloudy found that where the purpose of the assignment is to permit the plaintiff to recover the employer's pro rata share directly from the employer, then the settling defendant did not pay the employer's pro rata share. And where the, and the dissent actually agrees with that. The dissent said, I'd like to quote two sentences from the dissent at 169 Illinois, second page 48, where the dissent says, quote, the city and plaintiff disagreed as to the amount of the settlement. The city was unwilling to settle the entire suit and pursue a risky action for contribution. For the Cloudy majority, where a settling defendant is unwilling to settle the entire suit, he's only paying his own pro rata share. And when he only pays his own pro rata share, he has nothing to assign and the assignment is invalid. Hold on one second. It seems to me that the two of you have agreed that with the settlement, any liability on the part of summit was also extinguished by the settling defendants. The liability. It's not Cloudy anymore. It was, it is the same in Cloudy. The, the, uh, the settling defendant had to get a release of both himself, itself, the village and the employer. Otherwise the contribution action could have never proceeded. You can't exactly. Right. So it's, it's exactly the same situation here. The problem that I have is he didn't recover this money from you. In contribution as the plaintiff, he recovered it as the SNR or S and E of the third party defendants. If they had prosecuted their claim and not him, are you suggesting they had no right to recover against you? Yeah. If, if they had not assigned the contribution actions, yeah, the common liability would have been capped at 5.073 plaintiff would have walked away made whole by payment of the entire common liability. He would have been gone. There'd be no double recovery. It would be a straight up contribution action. Except for one problem. You would have had to pay them the five 92 point some odd percent of the $5 million. So from your standpoint, you would have had to pay the SNRs. He's recovering in the place of the SNRs. So a strong argument can be made that the two and following up on, of course, if it's 5 million times two, then they only paid their own pro rata shares and under Bobby, they had nothing to assign. They only paid their pro rata share of 5 million, not of the common liability. In order to have a contribution that's the holding of cloudy. If they don't settle the entire common liability, they have nothing to assign. They settled the common liability. Common liability is everything that was given in exchange for the settlement. What they gave in exchange for the settlement was $5,073,463.71 plus contribution claims against Summit, which is valued at $5,073,463.71. So it's two times the amount of cash that was paid. And you're only responsible for 92.5% of what they paid in excess of their pro rata shares of the settlement. I mean, I wish you'd go to another point because you ain't going to win on he got a double recovery. I think this case is on all fours with the cloudy majority. If you want to burn up your 15 minutes, talking about cloudy, go ahead. I'll just close on this point. The cloudy majority holds that were the purpose of the assignment is to permit the plaintiff to recover the employer's pro rata share directly from the employer, then the settling defendant has not paid the employer's share. And therefore he has nothing to assign. We believe this case is on all fours with cloudy. Mr. Pecora, you've got five minutes left. So let me segue into your I think it's your second issue. Is there anything in your argument about that they didn't pay more than their pro rata share that isn't part and parcel of what we've just been arguing about? Is there something different in there? Yeah, one final point. I think that Supreme Court decision in Dubai now shed some light on this because in Dubai now what the court says is you can't separate out the cash from the assignment. And they're both part of the consideration and they're both given for the release. And so I think Dubai now shed some light on this because in Dubai now the court held that the assignments there did not pass the good faith test of the Contribution Act. Do you concede that given the that Walmart and New Line and ICI all paid more than their pro rata share? Absolutely not. And I'm glad you asked that because this case changed fundamentally because of the assignments. Prior to the assignments, Walmart and New Line had been found in default and were found there was a summary judgment entered against them. And they were found guilty of failing to make a reasonable inspection when they knew or should have known, failing to provide a safe place to work when they knew or should have known, failing to remedy a dangerous condition, et cetera, et cetera, et cetera, when they knew or should have known. That was the state of the record when Walmart agreed to pay $2.5 million and New Line was found guilty of leaving an electrical conduit sticking out where they knew or should have known it was a hazard. That was the state of the record when New Line agreed to pay $950,000. With the assignments, they had an agreement to wash that all away. That all disappears over subsummit's objection. Then they go to the second trial and they put on evidence that they did nothing wrong. They were not aware of any hazard. They didn't violate any duty, which may have been well grounded in fact. But that was not the state of the record when they settled. When they settled, they were found guilty of all of these things. This case changed dramatically between the state of the record before the assignments and the state of the record after the assignments. So summit's position was changed very significantly by the assignments and that is so unjust here. And then they go, the final point that I've made, they have to plead and prove settlement and reasonable anticipation of liability. So what do they allege? They allege that ICI received complaints of protruding conduit and posing a tripping hazard. They allege that New Line failed to properly mark the barricade, mark or barricade. They alleged similar facts against Walmart. And then they alleged, quote, based on these facts, Walmart, ICI, New Line settled in reasonable anticipation of liability, which of course they had to prove as part of their contribution action. And then the trial court didn't allow the jury to hear any of that. And once again, they're allowed to put on evidence that they did nothing wrong, not aware of any hazard, didn't violate any duty. When all this evidence is judicial admissions of facts. What issue of yours are you talking about? I skipped over to issue number five, which is related to this question of how did things change with the assignment? They changed dramatically with the assignment because all this wrongdoing of which they were found guilty, which formed the basis of the settlement, all that was washed away with the assignments. Now they walk into court and show themselves to be pure as the driven snow. Thank you, Your Honor. Thank you. Thank you very much. I have a question. Questions. Counsel, was it necessary to have a filed contribution claim against New Line in order for it to appear on the verdict? No, no, Your Honor. I believe that uh, this court answered that question in Barney one and at paragraph 17 in Barney one, this court held quote, the jury must be allowed to apportion fault to each party that contributed to the settlement fund, including settling defendants who are not parties to the contribution action. So no, some of the, uh, New Line did not have to be brought back in order for New Line's name to be on the verdict form because that's what this court held at paragraph 17. But they needed to be on there if, uh, in order to, um, receive the, the money on the claim, but not, so there's two parts of this apportioning the liability entering judgment. Is that right? There's yes, yes, there's the apportionment and then there's the liability. I would ask the court to think of it this way, please. Um, if there's an apportionment, but the right for the plaintiff as Anthony to recover the pro rata share, there had to be a claim. Yes, exactly. But not to apportion the liability. The apportionment stands separate and apart from the judgment for the money. If there had been no assignment and New Line dismissed its contribution action and walked away and we didn't put New Line's name on the verdict form in the first trial, the result on this appeal, the first appeal would have been the same. Their name needs to go on the line. If there had been no assignment, how do they come back out of nowhere? Who's going to be their lawyer? If there's no assignment, what the plaintiff is doing here in this argument, he's treating the assignment as a fundamental change in the nature of the action from New Line's action. They had walked away from it to now. It's just another count, another theory of recovery. If New Line walked away from this case, they could never come back three years later because there was a mishap in the jury instructions in the first trial. The only way they get away with this is because when they do it every step in this case, the assignments fundamentally change everything. My question was only as to whether it was necessary to have a living viable claim to have their name on the- I believe under this, under Barney I, the answer is no. Thank you. Are there any other questions from the panel? Hearing none, Mr. Fugler, the floor is yours. You're on mute, Mr. Fugler. Got to come off of mute. There you go. Sorry about that. Good afternoon, Justices. On April 12th of 2007, Summit Fire Protection, the accountant, they entered into a contract and they entered a contract with the general contractor and with the owner in which they agreed as part of that contract to indemnify the owner without limitation for their negligent acts. And just as important, they waived their protections under Kotechi. Now they come before this court and they say that it's fundamentally unfair for them to be held to the obligations of that contract and they want this court to release them from their commitments. Now they don't claim that there was anything that was unconscionable about the contract. They don't claim that there was any fraud or they don't claim that the contract was anything but an arm's length agreement among the parties. And they're not requesting this court to strike the benefits that they received under the contract. They're requesting that this court absolve them of their obligations under that contract because they don't like who they have to pay. And that's essentially the argument. They acknowledge that they have a responsibility and they have a responsibility for their responsibility under the Contribution Act. They acknowledge that they're responsible for their pro rata share of the common liability. But what they want this court to do is say, well, you don't have to pay your pro rata share and that somehow these assignments are not appropriate. And I think that when you look at the assignments and we look at the decision under Cloudy, these were appropriate. So now the question becomes whether or not it was unfair not for the jury to apportion their fault because they specifically asked and this court ordered that New Line be part of the allocation of responsibility. And under that allocation, the jury came back. They had an opportunity, actually twice they had an opportunity to present their arguments to the jury that they were not responsible for the injuries that were sustained by the plaintiff. They had the opportunity to evidence they wanted to, to say that some of fire protection was not, we had a 0% responsibility and they did that. And they argued that in this case and the jury came back and they found them 92.5% at fault. Now I would like to address that 0.5 that they raised in this matter, that somehow. Mr. Vogler, I've got a couple of issues that I want to actually address that your opponent didn't get to because he wanted to stay on that one issue. I want to talk about the right to JNOV on the New Line portion of the contribution under the theory that it was time barred. New Line's, the action against New Line, New Line's contribution action was voluntarily dismissed on April the 11th, 2015. Now the statute of limitations for a contribution action is two years from the date you're served. I didn't bother to look the date they were served. So I went from the date that the answer was filed. Now they answered the complaint on July the 30th, 2009. So the very latest that the would have been July the 31st, 2011. More than one year passed from the time that that case was voluntarily dismissed and the statute of limitations had already run when the trial judge gave the plaintiff as assignee of New Line, the right to file a third party complaint containing the New Line contribution claim in, I think it was count three. So my question is, wasn't the New Line contribution claim against summit time barred? And why not? Well, it wasn't judge. And this is why we have a situation where the IPI requires that all of the settling defendants or only the settling defendants that are parties to the action be included in the jury verdict. That's not what we said in Bernei One. No, it's not. What this court said was all of the tortfeasors need to be included within the jury verdict. And so the court has two separate directions. One being that you must be a party in order to be on the jury verdict. And the other that all tortfeasors have to be included. And so that's why the court allowed the addition of New Line as a party. Except for one thing. This isn't a case. In this particular case, he's suing as the assignee of New Line. But if New Line's contribution claim against summit was time barred, he has no action. Now they still have to be on the verdict form to determine percentages of liability or fault vis-a-vis all tortfeasors. But they didn't have to be a plaintiff, a third party plaintiff, to be on that jury firm, which is the question that I understand why they had to be on the verdict form. But I am having difficulty with how you could reinstate a claim that was time barred. Well, as I indicated, I think that when we have two separate directions from the court, one being that you must be a party to be included in the jury verdict, the court has to somehow take both of those directions and put together the most equitable result. In Bernai, we never said he had to be a party to be on that verdict form. Never. No, no, I understand that. But there's a separate IPI that does require that. Separate and apart. That's not for contribution actions, right, that you're referring to? No, it is under the IPIs for the contribution action. But from a practical standpoint, Summit can't articulate how they were prejudiced in this case by the addition of Newline. They were very prejudiced by it. $950,000 worth of prejudice. By a recovery. $950,000 because Newline was a judge zero. So they would have paid $950,000 more than their pro rata share. Right. But that would have always been part of their responsibility as the... If there was still a viable live contribution action. But there was, I mean, and I just want to also, the voluntary non-suit in this case wasn't even, this was with prejudice. So it wasn't even one where I think you would have been allowed to refile. Well, I think in this case, given the instructions from the court, I think it was appropriate for to allow that claim, given the instructions from the court for them to be on the verdict form. But we only instructed that they had to be on the verdict form to determine the percentage of liability for the common liability of all torque features. So we said, you can't leave Newline off because if Newline were responsible to any percentage, that would affect the liability of summit vis-a-vis contribution. So we said, they've got to be on there, but we never said they had to be a party plaintiff or a party third party plaintiff, or in his case, the S&R, S&E of a third party plaintiff. But if they're on the verdict form, their contribution to the total liability, as well as the common liability that was paid, that would also follow and that would be their responsibility. No, it wouldn't be. If they were out by settlement and on and didn't file a contribution claim against summit, they still would have had to be on that verdict form to determine summit's percentage of the common liability, because the common liability is all torque features. If somebody doesn't want to bring a contribution claim, they don't have to, but they're still going to be on that verdict form. If someone has alleged that they're a torque feeser. Now jury in this case turned out and said, Newline was zero. But the problem is he recovered as the S&E of Newline for a contribution claim that was arguably time-barred because of the voluntary dismissal and the passage of the applicable two-year statute of limitations. I don't know for what reason or it makes no sense to me as to why Newline took a voluntary dismissal of their contribution claim back in April of 2015. That doesn't make any sense. It was the plaintiff, wasn't it? It was the plaintiff. As the S&E of Newline took the voluntary. Right. Doesn't make any sense to me, but they did it. The next, I have another question for you. All right. That's fine. I was going to point out that we do point that there was an interlocutory dismissal in our brief. Well, when was, but it became final when the judgment was entered in the first case. It's no longer interlocutory then. Well, it became appealable then. I think it was final in that it was with prejudice. With prejudice. You're right. But even assuming that you were right, that it was interlocutory. It wasn't interlocutory anymore when the judgment was made. The next question that I have for you is this question of insurance. Why are they not entitled to a set off for the amounts paid by the insurer under a policy that they procured? Well, there's a couple of reasons. One is that this court has already addressed that issue in the Barnet 1 and specifically found that they had forfeited any set off in Barnet 1. You are entirely correct. They did forfeit it in Barnet 1, but they didn't forfeit it in Barnet 2. It was in their post-judgment motion. They blew it the first time around, but they got another bite at the apple. Well, I don't think they got another apple to address that issue. They got another bite at the apple to allow for New Line to be on the verdict form. No, they got a trial. They got a trial. The insurance issue was placed in their post-judgment motion after Barnet 2 was tried. Now, they forfeited it in Barnet 1 vis-a-vis Barnet 2. It didn't make any difference because we vacated it anyway. But the fact of the matter is the case was tried again. They made the allegation and this time they stuck it in their post-judgment motion. So, assume that it's not barred by Barnet 1 and they haven't forfeited it as law of the case, if that's what you want to argue. So, tell me why they're not entitled to the set off for insurance. Well, because that goes to whether or not they were procuring insurance for vicarious liability or for the direct liability. And in this case, they were paying for Walmart's actual torts and their responsibility. That was the purpose of procuring the insurance, as opposed to it being a situation where they had a mutual exculpation where they were both covered under that policy. In that case, they would have gotten a set off and the case law is pretty clear on that. But when they were paying for Walmart's own torts and their own responsibility, they don't get a set off for that. That was something that they contracted to pay for. And so, now to come in and say that they should get a set off for their own responsibility and their own liability, that's not appropriate. When they talk about a double recovery, that's essentially what they're getting by allowing them a set off for Walmart's responsibility, as well as their own responsibility. It occurs to me that it's exactly the opposite. It occurs to me that to deny them set off for the amounts paid by their insurance carrier for both for Walmart and for, let's see, when paid by Summit's carrier, if you do that, they were obligated to indemnify. They produced insurance to indemnify. And if you don't give them the set off, they lose on indemnification and on contribution. They got a double loss. If they're not entitled to that set off, they paid, Summit's carrier paid $348,058 of Walmart's settlement amount. So, yeah, I think this goes back to that Monshine and what he said in that was, in that case, they don't get that set off for that recovery because of the distinct different ways in which the insurance is procured and what it's procured for. Well, if the insurance were procured to pay for Walmart's vicarious liability for the acts of Summit, I think you probably have a legitimate argument. But this insurance was paid for Walmart's direct liability, paid for by Summit under some contract that was entered into by the parties. So I have trouble with it, with the failure to get the set off on that. And I was looking for cases on it. I didn't find anything. And counsel, your time has expired. I obviously want you to finish answering Justice Hoffman's question and we'll see if there are any other questions. I would just reiterate that I don't see how the set off prejudices them. I don't see how they would be entitled to it. But other than that, I would just ask that the award be retired. Okay. Thank you. Any other questions from the panel? If not, Mr. Pagori, we're back to you for five minutes. Thank you, Judge. Thank you, Your Honors. I believe that this case is on all fours with Monshine. One of the things I pointed out in the brief is that the additional insured endorsements on the interstate policy here is identical to the additional insured endorsement that the employer in Monshine. Both of these endorsements cover the general contractor and or the owner for liability arising out of the work of the employer. And you have that here. The difference between the 773 that we asked for the first time and the 715 that we're asking for now is there's different map. Monshine holds that to prevent this double recovery by the owner or the general, the court reduces the settlement allocated to the owner and or the general contractor by the amount of the settlement paid out of the insurance purchased by the employer. And between Barney 1 and Barney 2, we went out and got that number and put it in the record. That 348058 that Justice Hoffman cited is in the record, as is the 425405 that was allocated to ICI. So those amounts were paid for them by Summits Insurance. And they would be making a double recovery if those amounts did not reduce the settlement that is allocated to those defendants when the common liability is calculated. The math is complicated, but we did it in the brief. And the number comes out, the set off to which we believe we're entitled to 715453, which is considerably less than the 773 that we asked for the first time. The difference being that you don't just take the number and use it to reduce the judgment. Monshine holds that you take the number and you reduce the settlement allocated to those settling defendants. So we believe we're on all fours with Monshine. We believe that the finding of Barney 1 is not law of the case, and I could go through that, but we did that in the briefs. I would like to leave you with this thought. Justice Nichols acknowledged that a double recovery occurs when these contribution actions are assigned. All of the appellate court decisions which allow these assignments follow that dissenting opinion. All of this money is going to the plaintiff by design. All of this money compensates him for his injury, for the common liability for his injury. You can call it anything you want. I mean this respectfully, but it winds up being money in the plaintiff's hands there by design. It cannot be that easy to circumvent what our Supreme Court has called the public policy of Illinois to prevent double recovery. Double recovery is something that has been condemned in one after another after another Supreme Court decision. It can't be avoided by the simple expedient of an assignment and calling it something else. I would ask you to please take a very hard look at that and to please take a very hard look at Justice Nichols' dissent, because that cannot be the law of Illinois. Thank you. Thank you very much. Thank you. Any other questions from the panel? If not, the matter is taken under advisement, and court staff is directed to remove the attorneys from the Zoom conference room.